# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JEFFREY AND KENNESHA BAGSBY, | ) Case No. 16-42391-can7 |
|     Debtors. | ) |
| _____ | ) |
| | ) |
| FLOORPLAN XPRESS, LLC-OK, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Adv. No. 16-04124-can |
| | ) |
| JEFFREY AND KENNESHA BAGSBY, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S 11 U.S.C. § 523(a)(4) CLAIMS

Defendants Jeffrey and Kennesha Bagsby move for partial summary judgment with respect to Plaintiff Floorplan Xpress, LLC-OK's complaint to determine dischargeability. Specifically, Defendants argue that there is no genuine dispute as to any material fact related to Plaintiff's allegations that Defendants owe a debt for fraud or defalcation while acting in a fiduciary capacity or embezzlement within the meaning of 11 U.S.C. § 523(a)(4), such that they are entitled to partial judgment on Plaintiff's complaint. Plaintiff opposes the motion. The matter is fully briefed and neither party requested oral argument. For the reasons set forth below, the court grants partial summary judgment in favor of Defendants and against Plaintiff.

*Nature of Case*

Defendants, husband and wife residing in Missouri, filed a voluntary petition for chapter 7 relief. They scheduled a debt owed to Plaintiff in the amount of $97,180.00 arising out of a "Business Debt – pending lawsuit 1616-CV17732." Plaintiff timely filed a complaint to determine dischargeability against both Defendants. Plaintiff alleges that Defendants had owned and operated a used car dealership known as KC Trend Auto, LLC. Plaintiff states that

1

Defendants caused their dealership to borrow $85,000 from Plaintiff pursuant to a floorplan financing arrangement, and that the loan was obtained by fraud, misrepresentation or false pretenses. Plaintiff also alleges that Defendants sold certain cars secured under that financing arrangement without paying Plaintiff pursuant to the terms of the loan. Plaintiff contends that under the express terms of the loan agreement, when Defendants sold the cars, they held the proceeds in trust for Plaintiff, and Defendants breached their fiduciary duties under that trust when they failed to turn over the sale proceeds. Plaintiff alleges Defendants owe $98,222.60. In the alternative, Plaintiff alleges Defendants embezzled the sale proceeds.

Plaintiff's two-count complaint seeks a determination of the amount of debt (Count I) and an exception from discharge under § 523(a)(2)(A) and § 523(a)(4) (Count II). Count II specifically alleges that the debt should be nondischargeable on the grounds (1) it is for fraud or defalcation while acting in a fiduciary capacity and (2) it is for embezzlement.

Defendants seek summary judgment only with respect to the § 523(a)(4) portion of Count II of Plaintiff's complaint. Defendants argue that, notwithstanding the language in the loan documents, the loan documents did not create a trust or render them fiduciaries. They also argue that any action in selling cars and failing to turn over the proceeds to Plaintiff as a secured lender cannot constitute embezzlement. The court agrees.

### *Summary Judgment Standard[1]*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), as incorporated by FED. R. BANKR. P. 7056. The court views the evidence and draws inferences in the light most favorable to the nonmovant. *Lambert v. City of Dumas*, 187

---

[1] Neither party questions this court's jurisdiction over the two adversaries at issue or its jurisdiction to hear and determine these two motions. *See* 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a), (b)(2)(I); 11 U.S.C. § 523; FED. R. BANKR. P. 7056; FED. R. CIV. P. 56.

2

F.3d 931, 934 (8th Cir. 1999). Summary judgment is mandatory where a party fails to establish an essential element of its case, where that party will bear the burden of proof at trial. *In re Shahrokhi*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). The movant must show that there is no genuine dispute of material fact *and* that it is entitled to judgment as a matter of law; at that point, the burden shifts to the nonmovant to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 706–07 (citations and internal quotations omitted). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This means that only disputed facts that could affect the outcome of the suit under the substantive law may preclude the entry of summary judgment. *Id.*

### *Facts in the Light Most Favorable to Plaintiff*

Defendants owned and operated a used car dealership known as KC Trend Auto, LLC (the "Dealer"). Defendants, as managing members of the Dealer, executed a "Revolving Line Credit ("Floorplan") Agreement, Demand Promissory Note Security Agreement and Guaranty Agreement" (the "Loan") in favor of Plaintiff dated September 26, 2013 in the principal amount of $85,000. The Loan was secured by a blanket lien in all of the Dealer's assets, including car inventory and titles. Loan ¶ 3.0. Both Defendants personally guaranteed the Loan.

The terms of the Loan authorized Plaintiff to make advances to or on behalf of the Dealer to enable the Dealer to purchase inventory. Loan ¶ 2.1. Paragraph 2.2 of the Loan provides:

> After approval of Dealer and execution of this Agreement . . . Dealer may obtain an Advance/Loan under this Agreement by purchasing inventory through Lender's authorized Auction Companies. Dealer will execute a bill of sale for any purchased inventory, containing an endorsement in form as provided by and approved by Lender at the time of purchase. Upon receipt of the original or approved copy of the bill of sale, a completed Odometer Disclosure Statement, and the original title from the authorized Auction Company, reflecting Dealer as purchaser, Lender shall advance the purchase price of such inventory on behalf of Dealer. Interest shall accrue upon the principal amount of such Advance from the Advance Date.

3

Repayment of Advances is governed by Paragraph 2.7, and requires the Dealer to pay all amounts due under an "Advance" (as defined in Loan ¶ 1.1) within 48 hours of the "Maturity Date," regardless of whether the vehicle has been sold or not. The "Maturity Date" is defined as "the earlier of: (1) the sale of the vehicle which is the subject of this Advance/Loan; or (2) 90 days from Advance/Loan Date." Loan ¶ 1.8.

Paragraph 2.11 of the Loan, entitled "Power of Attorney," provides that, "[b]y execution of this Agreement, Dealer hereby gives and grants to Lender a limited Power of Attorney, and pursuant to such Power grants Lender the authority to execute any checks, titles, releases, insurance checks, bond checks, bond claims and any other document required to allow Lender to recover or repossess any of its' [sic] Collateral or proceeds of such Collateral." Paragraph 4.0 of the Loan, entitled "Sales of Purchase Money Inventory," provides:

> Absent Default, Dealer may sell the Purchase Money Inventory to bona fide buyers in the ordinary course of Dealer's business. Upon the sale of any item of such Inventory, Dealer shall hold the amount received from the disposition of inventory in Trust for the benefit of Lender and Dealer shall pay to Lender all amounts due.

Other relevant loan provisions include (1) a dealer representation that it "has now and will have at the time of each Advance good and marketable title to the Purchase Money Inventory" [Loan ¶ 6.2]; (2) upon the event of default, Plaintiff shall have the rights and remedies of a secured party under the UCC with respect to the collateral [Loan ¶ 8.1]; and (3) Missouri law governs [Loan ¶ 9.8].

Defendants allege that Plaintiff advanced or loaned $85,000 of funds to the Dealer on September 23, 2013; Plaintiff did not controvert that statement, although Plaintiff alleges as an additional fact, which Defendants do not controvert, that the funds were loaned or advanced

4

directly to auction companies to allow the Dealer to purchase at least eight vehicles.[2] At some point, the Dealer sold the vehicles and did not pay the sale proceeds to Plaintiff. Plaintiff still holds the titles to the vehicles. Plaintiff then sued the Dealer, Defendants, and a co-guarantor in state court for damages for breach of contract, breach of guarantee, and fraudulent misrepresentation, in *Floorplan Xpress, LLC-OK v. KC Trend Auto*, *LLC, et al.*, Case No. 1616-CV17732, in the Circuit Court of Jackson County, Missouri. Plaintiff's petition as to Defendants was stayed by Defendants' bankruptcy filing. Plaintiff obtained a judgment against the co-guarantor in the amount of $98,222.60.

### *Breach of Fiduciary Duty*

Defendants argue that they are entitled to judgment because, as a matter of law, they owed no fiduciary duty to Plaintiff. Plaintiff responds that the Loan by its terms created a trust relationship between Defendants and Plaintiff, and that disputed material facts exist, precluding summary judgment. Plaintiff has not met its burden under *Celotex* of establishing that a fiduciary duty existed.

11 U.S.C. § 523(a)(4) provides that a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity." To establish nondischargeability under this subsection, a plaintiff must establish (1) that the debtor committed fraud or defalcation[3] (2) while acting within a fiduciary capacity. Here, the issue is whether the terms of the Loan created a fiduciary relationship.

The Eighth Circuit has addressed what "acting in a fiduciary capacity" means:

---

[2] Three factual discrepancies should be noted here. First, Plaintiff has alleged there are nine vehicles involved; Defendants allege there are only eight. Second, although the parties each stated the advance was made on September 23, 2013, the court questions that, given that the Loan is dated September 26, 2013, and appears to contemplate a series of advances, rather than a lump sum. Third, there is a discrepancy about whether the loan proceeds were advanced to the Dealer directly or to the auction companies; there are inconsistencies in what the parties allege in the complaint and answer and in the motion, response and reply. But, as will be explained below, these discrepancies are not material to the issues in the summary judgment motion.

[3] Defalcation requires a showing of an intentional wrong. *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013).

5

> "The meaning of these words has been fixed by judicial construction" since before the Civil War; "the statute 'speaks of technical trusts, and not those which the law implies from the contract.'" *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S. Ct. 151, 79 L. Ed. 393 (1934), quoting *Chapman v. Forsyth,* 43 U.S. 202, 208, 2 How. 202, 11 L. Ed. 236 (1844). "It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." *Id.* "Whether a relationship is a 'fiduciary' one within the meaning of § 523(a)(4) is a question of federal law." *In re Cochrane,* 124 F.3d 978, 984 (8th Cir.1997) (quotation omitted).

*In re Nail*, 680 F.3d 1036, 1039 (8th Cir. 2012).

The *Nail* case goes on to explain that numerous cases have addressed whether a debtor's alleged defalcations of contractual obligations to a secured lender were committed while acting in a fiduciary capacity. *Id.* at 1040. "It is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes." *Id.* (quoting *In re Long,* 774 F.2d 875, 878–79 (8th Cir.1985)). Most secured lending agreements impose duties on the borrower in dealing with the creditor's collateral, but those duties seldom create a § 523(a)(4) fiduciary capacity. *Id*. The *Nail* court explains:

> In *Davis,* for example, the Supreme Court affirmed the discharge of an automobile dealer from its secured debt to a bank even though the debtor had breached duties reflected in a document called a "trust receipt." The trust receipt and bill of sale were "a mortgage in another form," the Court explained. "A mortgagor in possession before condition broken is not a trustee for the mortgagee within the meaning of this statute, though he has charged himself with a duty to keep the security intact." 293 U.S. at 334, 55 S. Ct. 151. In *In re Long,* 774 F.2d at 878–79, we cited *Davis* in affirming a decision that § 523(a)(4) did not render a secured debt nondischargeable; we concluded that the contract between a secured inventory lender and the bankrupt merchant in which the borrower agreed to become trustee of an "express trust" was nonetheless "intrinsically more contractual than fiduciary."

*Nail*, 680 F.3d at 1040.

Notwithstanding the clear guidance from *Nail*, Plaintiff argues that its Loan created a trust relationship in two respects; first, because ¶ 4.0 provides that the Dealer "shall hold the amount received from the disposition of the inventory in Trust" and second, because the limited

6

power of attorney appointment in ¶ 2.11 created a fiduciary duty under Missouri law. Neither argument has merit.

*Nail* and *Davis*, as well as many other authorities cited by Defendants, establish unequivocally that a contract does not create the express technical trust required by § 523(a)(4) unless the contract also establishes the debtor as "a trustee before the wrong and without reference thereto." *Davis*, 293 U.S. at 333; *see also In re Harris*, 561 B.R. 726, 732 (B.A.P. 8th Cir. 2017) (same).

Here, Plaintiff has not pointed to any provision in the Loan that creates a trust relationship before the alleged wrong – the selling of the cars without remitting the proceeds. As for the limited power of attorney, the only authority Plaintiff cites to is Missouri common law. Binding authority is clear that federal and not state law determines whether a fiduciary relationship exists for purposes of § 523(a)(4). *E.g., In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997).

As a final matter, Plaintiff argues that disputed facts exist regarding the fiduciary relationship, precluding summary judgment. Specifically, Plaintiff argues that it "has no asserted separate counts for breach of fiduciary duty . . ." such that the court should construe Defendants' motion as a motion in limine, and that there is a factual dispute because Plaintiff still holds title to the cars. The court agrees with Defendants; if Plaintiff is conceding it has not pled a separate § 523(a)(4) count, then why should not the court dismiss for failure to state a claim?

The court does not understand Plaintiff's argument, but in the light most favorable to Plaintiff, construes the complaint as it is fairly pled, which clearly sounds in the elements of a § 523(a)(4) claim. As for the issue of how many car titles Plaintiff holds (eight, as Defendants allege, or nine in the light most favorable to Plaintiff), there is a factual dispute; however, whether Plaintiff holds car titles and how many car titles it holds (which is relevant to whether

7

Plaintiff is the owner of the cars, as discussed below) is not relevant to whether the Loan created a fiduciary relationship. In other words, this factual dispute is not *material*.

Plaintiff has the burden to prove that Defendants acted in a fiduciary capacity as part of its complaint to determine dischargeability under § 523(a)(4). Under *Celotex*, Plaintiff had the burden of coming forward with evidence to establish this essential element of its case. The only facts Plaintiff relies on are either irrelevant or nonmaterial to the issue of whether the Loan created a fiduciary relationship, and, as a matter of law, the Loan terms themselves did not create a fiduciary relationship. Thus, the court must grant summary judgment in favor of Defendants with respect to the allegation that it is a debt for fraud or defalcation while acting in a fiduciary capacity under § 523(a)(4).

### *Embezzlement*

Section 523(a)(4) also provides that a debtor entitled to a discharge under § 727 is not entitled to discharge a debt for embezzlement. Under § 523(a)(4), embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Belfry v. Cardozo (In re Belfry),* 862 F.2d 661, 662 (8th Cir. 1988) (citation and quotations omitted). A plaintiff must establish by a preponderance of the evidence that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. *Id.* To prevail here, Plaintiff must prove that Defendants "appropriated the funds at issue for [their] own benefit by fraudulent intent or deceit; deposited the funds into an account accessible only to [Defendants]; and that [Defendants were] not lawfully entitled to the use of those funds for the purposes for which they were in fact used." *Kruse v. Murray* (*In re Murray)*, 408 B.R. 268, 275 (Bankr. W.D. Mo. 2009).

Defendants argue here that the Loan established a secured creditor-borrower relationship, such that the Dealer owned the cars it allegedly sold "out of trust." Defendants also cite

Document      Page 9 of 10

numerous case authorities noting that one cannot embezzle property one owns. Plaintiff responds that a factual dispute exists as to whether Defendants or Plaintiff actually owned the cars, given that Plaintiff contends (1) it – and not the Dealer – advanced the funds to purchase the cars to the auction houses; (2) it still possesses the titles; and (3) a sale without transfer of the title is a crime and void under Missouri law. The court rejects Plaintiff's arguments.

Although there is a factual dispute about whether or not Plaintiff advanced funds to the Dealer directly to purchase the eight or nine cars at issue, that dispute is not material to the issue of who owned the cars and thus who had the right to use any sale proceeds under the Loan and applicable Missouri law. The Loan terms expressly provide that Plaintiff will advance funds to allow the Dealer to purchase cars; that the cars are collateral; that the Dealer will have title to the cars; and that, in the event of default, Plaintiff will have rights under the UCC as a secured creditor. *See* Mo. Rev. Stat. §§ 400.9-203(b)(3)(A) (a security agreement is one way a security interest "attaches" to collateral); 400.9-103 (purchase money security interest defined); 400.9-102(48) (inventory defined); 400.9-311(d) (certificate of title perfection does not apply to motor vehicle collateral held as inventory); 400.9-601 (rights of secured party upon default).

Notably, in response to Defendants' Motion, setting forth the allegations of Plaintiff's complaint alleging that the cars were collateral, the Affidavit of Plaintiff's representative does not state that Plaintiff owns the cars, only that Plaintiff has possession of the titles. Under Missouri law, holding a title pursuant to a floorplan financing agreement does not as a matter of law give the secured lender ownership of the car. Mo. Rev. Stat. § 400.9-202 (UCC Article 9 provisions apply whether title to collateral is held by debtor or secured party); *Van Hooser v. Banks*, 816 S.W.2d 25, 28 (Mo. Ct. App. 1991) (possession of certificate of title not conclusive of ownership); *Tinger v. Tinger,* 709 S.W.2d 123, 124 (Mo. Ct. App. 1986) (same). Since the Dealer owned the cars under Missouri law, Plaintiff's argument that Missouri law prevented the

9

Dealer from legally transferring title to consumers is simply not relevant to whether the Dealer or Plaintiff owned the vehicles.

In sum, Plaintiff has failed to come forward with evidence that it owned the cars, such that when the Dealer sold them, Defendants acting as agents of the Dealer could have embezzled the sale proceeds. As a matter of law, Defendants have established that there are no material controverted facts and that they are entitled to judgment as a matter of law with respect to Plaintiff's allegations that any debt they owe Plaintiff should be determined to be nondischargeable under § 523(a)(4).

## *Conclusion*

Defendants have met their burden of establishing as a matter of law that there are no material disputed facts and that they are entitled to judgment as a matter of law with respect to the portions of Count II of Plaintiff's complaint alleging that any debt should be nondischargeable under § 523(a)(4). A separate order will issue.

Dated: July 18, 2017

/s/ Cynthia A. Norton  
CYNTHIA A. NORTON  
United States Chief Bankruptcy Judge